## Green Moore v. The State.

### No. 3053.   Decided June 14, 1905.

**1.—Burglary—Charge of Court—Want of Consent—Indictment.**

Where on a trial for burglary the indictment charged the entry without the consent of the owner and occupant of the house, and the charge of the court instructed the jury that if they believed that defendant, by force in the nighttime, did enter the house occupied by the party injured, as charged in the indictment, with the intent to commit the crime of theft, to find him guilty, and besides in defining the offense in his general charge, the court directly told the jury before they would be warranted in convicting defendant they must find that the entry was made without the free consent of the occupant or one authorized to give such consent, and the proof did not raise any issue as to the matter of consent, there was no error in leaving out this feature in the direct charge applying the law to the facts.

**2.—Same—Possession—Occupation—Dwelling House—Chicken House.**

Where on a trial for burglary, the indictment charged the defendant with burglariously breaking and entering the house occupied by S., etc., and with stealing therefrom personal property therein being and belonging to the said S., from his possession without his consent, etc., and the proof showed that defendant broke into the chicken house of S., and that the latter occupied the dwelling house, and the chickens occupied the chicken house.   Held that a contention that the prosecutor did not occupy the chicken house was a play upon words, as occupancy here is equivalent to possession and there was no error.

Appeal from the District Court of Bexar.    Tried below before Hon. Edward Dwyer.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The testimony in this case showed that the owner of the chickens kept them in a chicken-house, and that his chickens were all marked with one punch between the toes on the left foot, and were white leghorns; that on the night of the alleged burglary he heard a noise at his chicken coop which was situated on his land containing thirty acres; that he went out with his lantern and found the door of his chicken house open and some of the chickens gone; that he found tracks made by rubber boots and measured them; that he also found where a horse which had been hitched to a buggy had been hitched to the fence; that his chicken house was about ten yards from his dwelling house and was fastened every night by him with a wooden clamp, and could not have been blown open by the wind; that he remembered the chicken house

was fastened and the door closed on the night the chickens were stolen; that his chicken house was on a different lot from that upon which his dwelling house stood in which he lived; that he found his chickens, that were stolen as aforesaid, at the city hall in San Antonio in the after- noon of the day they were stolen; that the chickens he recovered were white leghorns.

The testimony further shows that about eight o'clock in the morning on the day of the alleged burglary a witness saw chickens stick their heads out of the hind end of a wagon; that witness went up to the wagon and there saw twenty-one chickens in the wagon—all hens and Plymouth rocks; that he looked around for the owner for two hours, when he saw two men come out of a restaurant, the description of whom were furnished him by the police; that the two men went to the wagon and witness · asked them whether they owned the chickens and what they would take for them; that defendant, Green Moore, then said, "they are our chickens and I will sell them to you." That he asked $3.50 per dozen and witness took them and said he would go into the house and write a check for the money, but instead called a policeman who arrested the defendant and the defendant and the chickens were taken by the officers to the city hall at San Antonio, where the chickens were identified and carried away by the owner, as the chickens which had been stolen out of his coop on the night before.

The officers who arrested defendant testified that after duly warning defendant, that any statement he might make would be used against him as evidence in the trial of the case, the defendant told them that on the night of the burglary he and his cousin went to a house about six miles from town, in a buggy, and left the buggy with the horse tied to the fence, and crawled through a barbed-wire fence, that his cousin went in the barn and defendant staid outside and held the sack, and his cousin caught the chickens and put them into the sack and took them to the buggy, and drove back to the wagon and put them into the wagon and came on to town. The testimony shows that the owner of the chickens lived about six miles from San Antonio on the Corpus Christi road. Also that defendant wore rubber boots, etc.

*J. W. Preston & J. M. Eckford,* for appellant.—Revised Statutes, article 840. On question of possession, ownership, and occupancy Bigham v. State, 31 Texas Crim. Rep., 244; Lamater v. State, 38 Texas Crim. Rep., 249.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at confinement in the penitentiary for a term of two years, hence this appeal.

Appellant complains that the court by its charge instructed the jury to send him to the penitentiary regardless of whether he had prose-.

cutor's consent to enter the house. The charge applied the law to the facts, thus leaving out this feature so far as the direct averment is concerned. However, it states, if the jury believe that appellant by force in the night-time did enter the house occupied by Adolph Suelten- fuss, as charged in the indictment, with the intent to commit the crime of theft, to find him guilty. Now, here is a direct reference to the in- dictment, and the indictment in this respect charges the entry without the consent of the owner and occupant of the house. Besides in de- fining the offense, the court directly told the jury before they would be warranted in convicting defendant, they must find that the entry was made without the free consent of the occupant or one authorized to give such consent. We do not understand that the proof raised any issue as to this matter of consent.

It is also contended, the house in question being a chicken house, it could not be said to be occupied by prosecutor. In fact, the proof showed that he occupied the dwelling house and the chickens occupied the chicken house. This it occurs to us is a play upon words. Occu- pancy here is equivalent to possession. Appellant in that sense is shown to have been in occupation of the entire premises, consisting of thirty acres, and including the house in question. There being no error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]